John DOE, by his guardian Mary Doe, et al., Appellants,

v.

John L. McMILLAN, Chairman of the Committee on the District of Columbia of the United States House of Representatives, et al.

No. 75–2016.

United States Court of Appeals, District of Columbia Circuit.

Argued April 5, 1977.

Decided July 29, 1977.

Rehearing Denied Oct. 13, 1977.

John S. McCreery and Robert S. Catz, Antioch School of Law, Washington, D. C., for appellants.

Barbara L. Herwig, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty. and Robert E. Kopp, and William Kanter, Attys., Dept. of Justice, Washington, D. C., were on the brief for appellees, the Superintendent of Documents and the Public Printer.

Benton L. Becker and Fred M. Vinson, Washington, D. C., entered appearances for Congressional Appellees.

David P. Sutton, Asst. Corp. Counsel for the District of Columbia, Washington, D. C., entered an appearance for District of Columbia appellees.

Before TAMM, LEVENTHAL and MacKINNON, Circuit Judges.

Opinion for the court PER CURIAM.

PER CURIAM:

Appellants filed suit against various Members of Congress, their staffs and consultants, District of Columbia school officials, and the Public Printer and Superintendent of Public Documents, seeking declaratory and injunctive relief and damages based on the publication of a congressional report containing material claimed to invade their privacy. The district court dismissed their suit, and this court affirmed. The Supreme Court affirmed the dismissal as to the congressional and District of Columbia defendants, but remanded for further proceedings as to the Printer and Superintendent. On remand, the district court again dismissed and denied appellants' request for leave to amend their complaint. The present appeal was filed.

I.

On December 8, 1970, a report of the House of Representatives Committee on the District of Columbia dealing with problems in the District school system was published, H.R.Rep.No.91–1681, 91st Cong., 2d Sess. (1970). Included in the 459-page report were some 64 pages of absentee lists, memoranda on student disciplinary problems, and unsatisfactory student test papers, all of which identified the students involved. Various of these students and their parents, proceeding in forma pauperis and under assumed names to preserve anonymity, filed this class action in the district court on January 8, 1971, charging that the publication of these pages violated their constitutional and common-law right to privacy and other rights. They sought declaratory and injunctive relief and damages. Named as defendants were the members of the House Committee and various staff members and the investigator (congressional defendants), the Superintendent of Public Documents and Public Printer (Printer defendants), various District of Columbia school officials, including the members of the Board of Education (District defendants), and the United States. The district court denied appellants' motion for temporary relief and dismissed their complaint. This court granted an injunction pending appeal, but denied appellants' motion for summary reversal, 143 U.S.App.D.C. 157, 442 F.2d 879 (1971).

We subsequently affirmed the district court's dismissal of the complaint against all defendants, holding that in compiling and publishing the report the defendant Members of Congress and legislative employees[1] were "acting in the sphere of legitimate legislative activity," and were therefore protected from suit by the Speech or Debate Clause of the Constitution, Article I, § 6, cl. 1. Our decision further held that the legislative employees and District defendants had performed "discretionary" duties in furtherance of a valid legislative purpose, with proper congressional authorization, and so were protected by judicially-made "official immunity" under *Barr v. Mateo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). Finding adequate the assurance of the Federal appellees that no further distribution of the report was planned, we denied injunctive relief. 148 U.S.App.D.C. 280, 289–94, 459 F.2d 1304, 1313–18 (1972).

The Supreme Court granted certiorari and affirmed this court's decision as to the Members of Congress, their staffs and consultant, 412 U.S. 306, 314–18, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), finding that their acts extended only to the preparation of the report and the order that it be printed. In addition, the Court "[did] not disturb" this court's decision as to the District defendants, 412 U.S. at 324 n. 15, 93 S.Ct. 2018, and left standing the denial of injunctive relief, 412 U.S. at 318, 93 S.Ct. 2018. It held, however, that the immunity of the Printer defendants went no farther than that of the Members of Congress whom they served, and that the complaint against these defendants should not have been dismissed on official immunity grounds before the question was resolved "whether any part of the previous publication and public distribution . . . went beyond the limits of the legislative immunity provided by the Speech or Debate Clause of the constitution," 412 U.S. at 318, 93 S.Ct. at

2027. The Court therefore remanded for a determination of the actual extent of distribution and whether this distribution had exceeded "the legitimate legislative needs of Congress, and hence the limits of immunity," 412 U.S. at 324, 93 S.Ct. at 2031.

We in turn remanded to the district court. Based on an affidavit submitted by the Public Printer and other material in the record, the district court by memorandum and order on April 29, 1974, made findings of fact and conclusions of law. It was determined that in addition to 2557 copies of the report distributed within the Congress and its staff, 796 copies were distributed to various federal government agencies based on statutory requirements and standing orders. Another 796 copies were retained in a security cage for future distribution but because of this suit would not be distributed. About 54 "extra" copies were retained by the Printer for internal use and for distribution in case of spoilage. This distribution, the district court concluded, was entirely "routine, usual and as a matter of course followed the same regular, customary and orderly procedures as requisitions for all Congressional printing and binding of bills, laws and reports from Congressional committees." Mem. op. at 2–3, R. 28. This distribution, the district court concluded as a matter of law, "did not exceed the legitimate legislative needs of Congress and thus their actions remained within the limits of the immunity of the Speech or Debate Clause and the doctrine of official immunity." Mem. op. at 7. Finding no material issues of fact remaining, the district court entered summary judgment for the appellees, and by a separate order denied appellants' motions for leave to amend their complaint to modify the cause of action and add a District of Columbia defendant. On May 22, 1974, the district court denied appellants' motion for a new trial, alteration of judgment and amendment of findings of fact and conclu-

---

1. We consider the immunity of the Printer and Superintendent to be identical to that of the legislative employees.

sions of law, and appellants noted an appeal.[2]

In a memorandum filed on that appeal, the Printer appellees stated that, contrary to the Printer's earlier affidavit, there had in fact been some distribution of the report outside the federal government. This court vacated the district court's judgment and remanded to permit it to consider the significance of this factual error, No. 74–1812 (D.C.Cir. April 28, 1975). On remand, the Printer appellees submitted new affidavits, R. 39, stating that the earlier affidavit had erroneously assumed that the 796 copies of the report delivered to federal agencies had remained within the federal government. Rather, some of these copies were delivered by the printer to the Superintendent, under standing requisition, and were in turn distributed pursuant to standing orders for all committee reports. It developed that about 92 copies were distributed to members of the public who maintained standing orders for all committee reports,[3] and that about 80 copies were automatically delivered to foreign legations with standing orders for all committee reports under 44 U.S.C. § 1717 (1970).[4] Other parts of the original affidavit were reaffirmed. The district court on July 10, 1975, issued an order concluding

> that the factual error in the prior affidavit executed by the Public Printer does not affect the Conclusions of Law or Order entered by the Court in these proceedings on April 29, 1974 in any way whatsoever; and that the record now be-

fore the Court established that the extent of publication and distribution of the Report did not exceed the legitimate legislative needs of Congress . . . .

R. 53. It therefore again granted appellees' motion for summary judgment and dismissed the complaint. Appeal was again taken.

## II.

■ The principal issue raised in this appeal is whether the district court correctly held, as a matter of law, that the distribution it found by the Printer and Superintendent was within the scope of the immunity recognized by the Supreme Court. Appellants contend that the Court's opinion means that *any* distribution "beyond the halls of Congress," 412 U.S. at 317, 93 S.Ct. 2018, transcends any "legitimate legislative needs,"[5] and so is *per se* unprotected by the Speech or Debate Clause or official immunity. Appellants read the Supreme Court's opinion much too broadly.

The Court's opinion in *Doe* does not expressly adopt the *per se* approach advocated by appellants, and its phrasing of the question addressed belies any such inference. The Court considered only "whether the act of [public distribution], simply because authorized by Congress, must *always* be considered 'an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings' . . . ." 412 U.S. at 314, 93 S.Ct. at 2025 (emphasis added), *quot-*

---

**2.** Appellants' novel "motion for clarification" of the Supreme Court opinion prior to determination of that appeal, filed November 4, 1974, was denied on December 9, 1974. 419 U.S. 1043, 95 S.Ct. 614, 42 L.Ed.2d 637 (1974).

**3.** Recipients included law firms, university law libraries, and law publishers such as Commerce Clearing House. Distribution had been halted before copies were distributed to depository libraries, the Library of Congress, the National Archives, or Senate Library. McCormick Affidavit, R. 39 at 5, 8, Exhibit B.

**4.** 44 U.S.C. § 1717 (1970) provides: "Documents and reports may be furnished to foreign legations to the United States upon request

stating those desired and requisition upon the Public Printer by the Secretary of State. . ."

**5.** The Supreme Court in *Doe* defines the conduct protected by the Speech or Debate immunity in various terms, *e. g.*: " 'sphere of legitimate legislative activity,' " 412 U.S. at 312, 320, 93 S.Ct. 2018, *quoting Gravel v. United States,* 408 U.S. 606, 624, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); "reasonable bounds of the legislative task," 412 U.S. at 315, 93 S.Ct. at 2026; "reasonable requirements of the legislative function", 412 U.S. at 316, 93 S.Ct. at 2026; "legitimate legislative needs of Congress," 412 U.S. at 324, 93 S.Ct. 2018. We read the Supreme Court's opinion as using these terms synonymously.

*ing Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). In answering this question in the negative, the Court determined only that such distribution was not *necessarily privileged,* and not that it was *per se* unprivileged.[6] The Court remanded both for a determination of the actual extent of distribution, and for an initial determination whether that distribution was within the privilege:

> We are unaware, from this record, of the extent of the publication and distribution of the report which has taken place to date. Thus, we have little basis for judging whether the legitimate legislative needs of Congress, and hence the limits of immunity, have been exceeded. These matters are for the lower courts in the first instance.

412 U.S. at 324–25, 93 S.Ct. at 2031.

Not only did the Court not foreclose the district court from finding some public distribution to fall within the immunity, but there are several indications in both the opinion for the Court and the separate opinions of the Justices that such a result was contemplated. The Court remanded because the district and circuit courts' disposition of the case had "left the question whether *any part* of the previous publication and *public distribution* by [Printer] respondents . . . went beyond the limits of the legislative immunity provided by the Speech or Debate Clause . . . ." 412 U.S. at 318, 93 S.Ct. at 2027 (emphasis added). Mr. Justice Rehnquist, in a concurring and dissenting opinion joined by the Chief Justice, Mr. Justice Blackmun, and in relevant part by Mr. Justice Stewart, stated:

> While there are intimations in today's opinion that the privilege does not cover such authorized public distribution, the ultimate holding is apparently that the District Court must take evidence and determine for itself whether or not such

publication in this case was within the "legitimate legislative needs of Congress," . . . . . .

412 U.S. at 339, 93 S.Ct. at 2038 (Rehnquist, J., concurring and dissenting).

Moreover, both the opinion for the Court and the separate opinions recognized that the Congress possessed some "informing function." The Court's opinion acknowledged the "importance of informing the public about the business of Congress," 412 U.S. at 314, 93 S.Ct. at 2025, and concluded only that public dissemination of the report was not *necessarily* within the immunity. Both the concurring opinion of Mr. Justice Douglas, with whom Mr. Justice Brennan and Mr. Justice Marshall joined, and the concurring and dissenting opinions, emphasized that informing the public concerning matters before Congress was a "legitimate legislative function." *See* 412 U.S. at 328, 93 S.Ct. at 2025 (Douglas, J., concurring); 412 U.S. at 332–334, 93 S.Ct. 2018 (Blackmun, J., concurring and dissenting).

The Supreme Court thus left it for the district court in the first instance to determine both the actual extent of distribution *and* whether that distribution as a matter of fact and law served a "legitimate legislative need," and was therefore within the privilege. We conclude that in making this determination the district court was free to explore that issue, and the fact that some copies of the report were distributed to members of the public was not conclusive that the privilege had been exceeded. The remaining question for us, therefore, is whether the district court properly concluded that the limited distribution to various federal agencies and members of the public with standing orders for all congressional reports was within the legitimate legislative needs of the Congress.

As the district court found on the basis of the record, the distribution in this case was

**6.** The Court stated the scope of its conclusion: "We only deal, in the present case, with general, public distribution beyond the halls of Congress and the establishments of its functionaries, *and* beyond the apparent needs of the '*due* functioning of the [legislative] process.'" 412

U.S. at 317, 93 S.Ct. at 2027, *quoting United States v. Brewster,* 408 U.S. 501, 516, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) (emphasis on *and* supplied). The Court chose the word *and* rather than the phrase *and therefore.*

"routine and ordinary" and quite limited in scope; in fact considerably more limited than it would have been had routine distribution been completed. Distribution was solely to persons and agencies with standing orders for all reports, and there was no attempt by the Printer or Superintendent or anyone within their control to call attention to the report or its contents. No copies of the report were distributed in response to specific orders for that report, and there is no indication that any recipient had any particular interest in this report. Distribution ceased as soon as objections to the report's contents were received. Such routine distribution to federal government agencies outside the Congress serves to permit comment upon proposed legislation by the agencies that may be directly affected by it, and at least where the Printer defendants had no notice that the information was likely to be misused in any way, we cannot say that such distribution is outside the legitimate legislative purposes of Congress.

 We reach a similar conclusion as to the limited distribution in this case to persons outside the federal government. As stated, this distribution was limited in scope to persons with a general interest in all matters before Congress. Because of the wide breadth and magnitude of their interests, and the congressional practice in certain instances of permitting non-germane Senate amendments [7] to pending bills, some of our citizens have learned that they should obtain reports and information on all congressional activities in order to be assured to the maximum extent possible that they are informed on all their specific interests in particular matters. We cannot say that filling their standing orders for all congressional reports does not meet a legislative purpose. Distribution of such reports informs the public and permits them to comment on pending matters. It permits individuals and companies who consider their interests to be affected to take steps to exercise their constitutional right of petition. The right to petition is one of the freedoms protected by the First Amendment of the Bill of Rights. *Eastern R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). This right is not limited to petitioning Congress but extends to administrative agencies and to the courts. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *United Mine Workers v. Pennington*, 381 U.S. 657, 669–670, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The right to petition would be meaningless if proceedings in Congress were not publicly available. In the present instance, the report related to the conditions surrounding education in the District of Columbia and a great many people with widely varying interests and concern in that subject, and in the moneys to be appropriated by Congress for education in the District, were vitally interested in the facts the Congress found. Restricting distribution of committee hearings and reports to Members of Congress and the federal agencies would be unthinkable. Had not the subject report been available to the public, appellants might not have learned of its contents. This is merely one illustration of the need to make such reports generally available to the public. We need not, however, consider the proper result in a case where distribution was more extensive, was specially promoted, was made in response to specific requests rather than standing orders, or continued for a period after notice of objections was received. On the facts of the present case, the district court did not err in holding that the distribution did not exceed the "legitimate legislative needs of Congress," and in therefore entering summary judgment for the Printer appellees.

### III.

 The Supreme Court, this court and the district court have so far considered only whether the Printer appellees were protected by an absolute immunity under the Speech or Debate Clause or official immunity doctrine. We now consider

---

**7.** L. Deschler's Procedure in the U.S. House of Representatives ch. 28 § 20 (1974).

whether, in addition, these appellees were protected by a qualified immunity. The Supreme Court has recognized a qualified immunity, available at common law and in actions under 42 U.S.C. § 1983 (1970), covering acts done in good faith and with a reasonable belief in their legality by state officers unprotected by an absolute immunity. *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 238–49, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1972); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This court has held as well that such a qualified immunity is available to protect federal officers whose acts, while in good faith, are outside the bounds protected by an absolute official immunity. *Apton v. Wilson*, 165 U.S.App.D.C. 22, 29–34, 506 F.2d 83, 90–95 (1974). Similarly, the Second Circuit on remand from the Supreme Court in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), *on remand*, 456 F.2d 1339 (2d Cir. 1972), held that the agent defendants in that case were not "discretionary" officers and so were unprotected by any absolute official immunity, but nevertheless had available an affirmative defense based on "good faith and 'reasonable belief' in the validity of the arrest or search," 456 F.2d at 1347–48.

We conclude that public policy is served by a holding that the Printer defendants in the present case have available a qualified immunity for their official acts, even though they may exceed the protection of the absolute Speech or Debate Clause immunity. It would serve the interests of neither the Congress nor the public to require the Printer and Superintendent, and indeed each of their employees, to impose prior censorship on all congressional documents on pain of personal liability for damages. On the record in the present case, all distribution of the report was within the scope of the Printer appellees' authority and pursuant to statutory direction or congressional orders they could have reasonably believed were valid. At the time of the distribution of which appellants complain, the Printer appellees had no notice of any potential injury from distribution of the report, and all distribution was halted as soon as such notice was received. These appellees thus acted in good faith and with a reasonable belief in the legality of their actions, and so were protected by their qualified immunity. On this alternative ground, we affirm the district court's entry of summary judgment for the Printer appellees.[8]

### IV.

On remand from the Supreme Court and this court, appellants sought leave to amend their complaint to modify their cause of action against the congressional defendants and to join an additional District school official defendant. The district court denied this motion, R. 29, and appellants now assign this denial as error.

Appellants acknowledge that the Supreme Court affirmed the district court's initial dismissal of their complaint against the congressional defendants. Moreover, it does not appear from the Supreme Court's affirmance of the dismissal as to the congressional defendants that the possibility of a subsequent amendment of the complaint was contemplated:

The complaint before us alleges that the respondents caused the Committee report "to be distributed to the public," that "distribution of the report continues to

---

8. Like the Supreme Court, 412 U.S. at 325, 93 S.Ct. 2018, we again dispose of this case on immunity grounds. We thus have no occasion to determine whether appellants have stated a valid cause of action for damages for invasion of privacy. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Nor need we resolve whether the present Public Printer, Thomas F. McCormick, became a party to the action for damages after the death of Adolphus N. Smith, the Public Printer at the time this action was commenced, *see Spomer v. Littleton*, 414 U.S. 514, 520, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974). Finally, we do not decide whether appellants' characterization of their cause of action at oral argument as one against the Printer defendants only in their official capacities amounted to a waiver of the claim for damages. *See United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

the present," and that, "unless restrained, defendants will continue to distribute and publish" damaging information about petitioners and their children. It does not expressly appear from the complaint, *nor is it contended in this Court*, that either the Members of Congress or the Committee personnel did anything more than conduct the hearings, prepare the report, and authorize its publication. As we have stated, such acts by those respondents are protected by the Speech or Debate Clause and may not serve as a predicate for suit. The complaint was therefore properly dismissed as to these respondents. . . .

412 U.S. at 317–18, 93 S.Ct. at 2027 (emphasis added). Nevertheless, appellants now seek to avoid this affirmance by amending their complaint to "allege public distribution of the report by the Congressional appellees," Appellants' Br. at 17.

█ The amendment sought here is governed by Fed.R.Civ.P. 15(a), which requires either written consent of the adverse party or leave of the court, but states that "leave [to amend] shall be freely given when justice so requires." The decision to grant or deny leave to amend, however, is vested in the sound discretion of the trial court. *See, e. g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (dictum); *Lyons v. Board of Education*, 523 F.2d 340, 348 (8th Cir. 1975); 3 J. Moore, Federal Practice ¶¶ 15.02, 15.08 (1964). "Among the more common reasons for denying leave to amend are that the amendment will result in undue prejudice to the other party, is unduly delayed, . . . or that the party has had sufficient opportunity to state a claim and has failed." 3 J. Moore, *supra*, ¶ 15.08[4] at 897–900 (footnotes omitted). In the present case, the appellants' complaint had been before the district court, this court and the Supreme Court for over thirty-eight months before appellants filed the first of their motions for leave to file an amended complaint. As the Supreme Court noted, 412 U.S. at 317–18, 93 S.Ct. 2018,

quoted *supra*, appellants gave no indication before that Court of any potential change in their theory of the case. A review of the record reveals no such indication to this court, the district court or the Government before these motions were filed, and no sound reason for the appellants' failure to seek amendment earlier. When a plaintiff seeks to file an amended complaint this tardily, it is within the sound discretion of the district court, in consideration of the potential prejudice to the other party and the interest in eventual resolution of litigation, to deny leave to amend. *See, e. g., Zenith Radio Corp. v. Hazeltine Research, Inc., supra*, 401 U.S. at 331–33, 91 S.Ct. 795; *Lyons v. Board of Education, supra*; *Wealdin Corp. v. Schwey*, 482 F.2d 550 (5th Cir. 1973); *Komie v. Buehler Corp.*, 449 F.2d 644, 648 (9th Cir. 1971). On the record in the present case, we do not find that the district court's denial of leave to amend was an abuse of discretion. We thus need not resolve whether the Supreme Court's opinion affirmatively precluded amendment of appellants' complaint on remand.

█ The district court's denial of appellants' belated attempt to add as a party defendant Mignon B. Johnson, assistant principal of Jefferson Junior High School, is affirmed for the same reason. The district court did not abuse its discretion in declining to permit the joinder of Ms. Johnson over three years after the institution of the action, and after this court had affirmed the district court's original dismissal as to the other District defendants and the Supreme Court had "not disturb[ed]" this affirmance, 412 U.S. at 324 n. 15, 93 S.Ct. 2018. This joinder could have seriously prejudiced her interests, and no valid reason was articulated by appellants for their failure to seek to join her earlier.

The judgment of the district court is affirmed.

*Judgment accordingly.*

## ON PETITION FOR REHEARING

### ORDER

On consideration of the petition for rehearing filed by appellants John Doe, et al., it is

ORDERED by the Court that appellants' aforesaid petition is denied.

Statement of LEVENTHAL, Circuit Judge, concurring in the denial of the petition for rehearing.

LEVENTHAL, Circuit Judge, concurring:

I concur in the denial of the petition for rehearing, but believe it calls for another word concerning Part IV of the per curiam opinion.

The particular issue is denial of leave to file an amended complaint against the Congressmen because of the report challenged as an egregious violation of plaintiffs' privacy. The Supreme Court's opinion affirming dismissal of the original complaint against the Congressmen stated that it was material that there had been no claim of public distribution by the Congressmen. *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973).

On remand, plaintiffs sought leave to amend the complaint to allege "public distribution of the report by the Congressional appellees." That motion was denied, and this was one of the grounds of appeal.

This court's opinion of affirmance rested on the ground that the amendment was tardy and this was a matter within the discretion of the district court. This ground was not briefed by the government, and I now consider it inappropriate. The occurrences in both courts, marshaled in the petition for rehearing, indicate first that plaintiff's counsel acted with reasonable expedition all things considered, and second that the district court did not purport to exercise a discretion on the ground of tardiness, but rather used other grounds that are questionable.*

I join in denying the petition for rehearing on the ground that it relates to a secondary issue of no current import. The principal ground of the appeal in the present case, No. 75–2016, concerned the ruling of the district court that the incidental public distribution of the report, to those who had a standing order for committee reports with the Government Printing Office, was entirely routine and usual and did not exceed the legitimate legislative needs of the Congress. This court sustained the district court, and I concur in that ruling.

The attempt to claim that the Congressional defendants participated in the public distribution was a subsidiary issue. There was no inkling that the "public distribution" now claimed as to the Congressmen was anything other than the routine distribution which the court held not to exceed the legitimate needs of Congress.

When the court is confronted with something as unusual as an attempt to sue Congressmen for participating in a "public" distribution, the least plaintiffs must supply before pressing any claim to discovery, is a concrete factual indication that there was indeed a "public" distribution.

---

* The original complaint was dismissed a few days after it was filed. There were difficulties with seeking to amend the complaint in the trial court while the case was lodged in the appellate court. Procedures are available for use when a point is crucial, but that did not develop until the Supreme Court's ruling. The Supreme Court judgment in *Doe v. McMillan* issued May 29, 1973. On July 24, 1973, this court requested supplemental memoranda as to the action to be taken in the light of the Supreme Court decision. Plaintiffs' counsel filed a memorandum of Aug. 23, 1973, announcing the intention to move the district court for leave to amend the complaint. This court remanded on Oct. 15, 1973. On remand, the case was reassigned to a new district judge. At his status call, plaintiffs' counsel was given two weeks to seek leave to file the amended complaint. A motion, with amended complaint attached, was filed timely on March 27, 1974.

At a session held April 17, 1974, the district court denied the motion, saying (Tr. 15): "Under the Supreme Court decision they are out of the case. I don't think you can use a vehicle denominated as an Amended Complaint to state a complete new theory and try to avoid the thrust of the statute of limitations."

On April 29, 1974, the district court entered an order which recited that "no motion for leave to file with regard to same amended complaint [relating to Congressional defendants] having been filed," and directed that the amended complaint be "stricken".