State of NEW YORK, et al., Plaintiffs,

v.

**MICROSOFT CORPORATION,**
**Defendant.**

No. CIV.A. 98–1233(CKK).

United States District Court,
District of Columbia.

June 12, 2002.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Presently pending before the Court is a motion by Defendant Microsoft Corporation ("Microsoft") seeking "dismissal of the Non–Settling States' demand for equitable relief." See Microsoft Mot. at 1. Microsoft filed its motion and memorandum in support thereof following the remand of the above-captioned case from the Court of Appeals for the District of Columbia Circuit and immediately prior to the commencement of evidentiary proceedings on the issue of remedy for Microsoft's violations of Section 2 of the Sherman Act. The Litigating States[1] oppose Microsoft's motion on multiple grounds. Upon review of Defendant's motion, Plaintiffs' opposition, Defendant's reply, the brief of the United States as amicus curiae, the brief of the State of New York as amicus curiae, and the brief of twenty-four other states[2] as amici curiae, the Court concludes that Defendant's motion shall be denied.

## I. PROCEDURAL HISTORY [3]

On May 18, 1998, the United States and a group of state plaintiffs filed separate civil complaints alleging antitrust violations by Microsoft and seeking preliminary and permanent injunctions barring the company's allegedly unlawful conduct. See United States v. Microsoft Corp., 253 F.3d 34, 47 (D.C.Cir.2001). In United States v. Microsoft Corp., No. 98–1232 (D.C.C.), the federal government brought claims pursuant to federal law, while in State of New York, et al. v. Microsoft Corp., No. 98–1233 (D.D.C.), the Plaintiff States brought claims pursuant to both federal and state law. These two cases were consolidated, and following a bench trial in the consolidated cases, Judge Thomas Penfield Jackson concluded that Microsoft had violated Sections 1 and 2 of the Sherman Act. See generally United States v. Microsoft Corp., 87 F.Supp.2d 30 (D.D.C.2000). Correspondingly, Judge Jackson held Microsoft liable for violations of the state antitrust laws analogous to Sections 1 and 2 of the Sherman Act in each of the nineteen Plaintiff States and the District of Columbia.[4] Id. at 54. Microsoft filed an appeal in both cases. On appeal, the D.C. Circuit deferred to Judge Jackson's factual findings, altered his findings of liability affirming in part and reversing in part, and vacated the

---

1. The record in this case reflects that the nine states and the District of Columbia proceeding to litigate this case prefer to be call the "Litigating States," as opposed to the "Non–Settling States." As a matter of courtesy, the Court will refer to this group of plaintiffs by their chosen title, or simply as "Plaintiffs."

2. This amicus brief was filed by the States of Arizona, Arkansas, Colorado, Idaho, Illinois, Indiana, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nevada, New Hampshire, New Jersey, North Dakota, Ohio, Oregon, South Dakota, Tennessee, Vermont, Washington, and Wisconsin, and the Commonwealth of Kentucky.

3. The history of this case is lengthy and complicated. As not all of the historical details are pertinent to the instant motion, the Court will recount, in summary form, limited portions of the procedural history of this case.

4. The suit styled as State of New York, et al. v. Microsoft Corp., No. 98–1233, was originally brought by twenty states and the District of Columbia. One state withdrew from the action prior to the issuance of liability findings by the District Court. Another state settled its claims in July of 2001.

remedy decree. *See generally Microsoft,* 253 F.3d 34.

The Court of Appeals remanded the cases to the District Court with instructions to hold a "remedies-specific evidentiary hearing," *id.* at 103, and to "fashion an appropriate remedy" in light of the revised liability findings, *id.* at 105. Following remand, pursuant to Court order, the parties in the two consolidated cases entered into intensive settlement negotiations. *See United States v. Microsoft Corp.,* Nos. 98–1232 and 98–1233 (D.C.C. Sept. 28, 2001) (order requiring the parties to enter into settlement negotiations). The settlement negotiations did not resolve both cases in their entirety. However, the United States and Microsoft were able to reach a resolution in *United States v. Microsoft Corp.* in the form of a proposed consent decree. The settlement negotiations were partially successful with regard to the states' case, *State of New York, et al. v. Microsoft Corp.;* a portion of the Plaintiff States joined in the settlement between the United States and Microsoft. Consequently, these states have elected not to proceed to a remedies-specific hearing in *State of New York, et al. v. Microsoft Corp.* Those states which opted not to join the settlement between the United States and Microsoft—the Litigating States—have proposed a remedy distinct from that presented in the proposed consent decree. Microsoft's motion addresses only the continuing request for injunctive relief by these Litigating States.

## II. LEGAL STANDARD

Ordinarily, the Court would commence its discussion of a dispositive motion, such as a motion to dismiss, with a succinct statement of the legal standard applicable to the pending motion. In this instance, the parties have provided little guidance on the threshold question of the appropriate legal standard. Despite labeling its motion as a "motion to dismiss," Microsoft does not identify any basis in the Federal Rules of Civil Procedure which permits the filing of a post-liability "motion to dismiss." Upon examination by the Court, the authorization for Defendant's motion is not immediately apparent in the Federal Rules. Still, the Court will endeavor to identify the proper basis for Defendant's motion, and hence, the applicable legal standard, before proceeding to the merits of the arguments contained therein.

Taking the title of Microsoft's motion as a starting point, the Court turns to Rule 12 of the Federal Rules of Civil Procedure which, by its own title, concerns "Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on Pleadings." Fed.R.Civ.P. 12. Motions to dismiss brought pursuant to Rule 12(b) of the Federal Rules of Civil Procedure must be "made before pleading if a further pleading is permitted." Fed.R.Civ.P. 12(b). Rule 12(b) further specifies that where "a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief." *Id.* Clearly the parties are well past the pleading stage and indeed, are past a trial on the merits of Plaintiffs' claims. Thus, at a minimum, Microsoft's "motion to dismiss" does not appear to fit the ordinary parameters of a motion pursuant to subsection (b) of Rule 12.[5]

---

**5.** Rule 12(b) applies to the following defenses: "(1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19." Fed.R.Civ.P. 12(b).

Arguments presented by Microsoft in its reply memorandum give the impression that Microsoft has based its request for dismissal upon an asserted lack of subject matter jurisdiction. *See generally* Microsoft Reply. Given this position, Microsoft's motion could be considered in accordance with Rule 12(h)(3) of the Federal Rules of Civil Procedure, which authorizes challenges to subject matter jurisdiction at any point in the proceedings. Fed. R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Accordingly, the Court will treat any of Microsoft's arguments which can be characterized as concerning subject matter jurisdiction as having been raised pursuant to Rule 12(h)(3).[6]

This conclusion, however, does not provide an appropriate standard for many of Microsoft's arguments which cannot be couched in terms of jurisdiction and instead appear to raise issues relating to judgment on the merits. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ("Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").[7] In this regard, Microsoft's motion reads largely as an attack on the liability findings of the Court of Appeals in this case. To the extent that Microsoft's motion challenges the substantive merits of Plaintiffs' case, for lack of a better standard, the Court will treat the motion as a motion for partial summary judgment.[8]

## III. DISCUSSION

Plaintiffs' action arises, in part, under Section 16 of the Clayton Act, which provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws ...." 15 U.S.C. § 26.

**6.** "[I]t is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In its consideration of a motion to dismiss for lack of jurisdiction, a district court may look beyond the pleadings to inquire into facts pertinent to its jurisdiction. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).

**7.** Beyond an initial determination that "a plaintiff's jurisdiction-conferring claims are not insubstantial on their face, no further consideration of the merits of the claim(s) is relevant to a determination of the court's jurisdiction of the subject matter." *Hagans v. Lavine,* 415 U.S. 528, 542 n. 10, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (internal cita-

tions and quotation marks omitted). If, after making the threshold determination to exercise jurisdiction, the court finds that the plaintiff's allegations do not state a ground for relief, the ensuing dismissal of the case "would be on the merits, not for want of jurisdiction." *Bell,* 327 U.S. at 682, 66 S.Ct. 773.

**8.** For Microsoft's non-jurisdictional arguments, the Court may apply the ordinary summary judgment standard. Summary judgment should be granted only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling upon a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992).

In addition to the Clayton Act, Plaintiffs' request for equitable relief rests upon the finding by the District Court, as affirmed by the Court of Appeals, that Defendant violated the various state statutes analogous to the federal antitrust statutes. Plaintiffs in this case seek equitable relief in their capacity as *parens patriae* "to prevent or repair harm to [their] quasisovereign interests," *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 258, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972) (internal quotations omitted), resulting from federal and state antitrust violations already found in this case by the District Court and affirmed by the Court of Appeals. *See generally Microsoft*, 253 F.3d 34; *Microsoft*, 87 F.Supp.2d 30.

Microsoft's "motion to dismiss" attack Plaintiffs' right to seek equitable relief on numerous fronts. Microsoft couches its primary arguments in terms of "standing" and, in doing so, merges and mingles a number of distinct doctrines. Microsoft primarily relies upon the doctrines of "antitrust standing" "antitrust injury," and "*parens patriae* standing." In the discussion to follow, the Court will address each of these arguments, as well as Microsoft's secondary arguments.

## A. Antitrust Standing and Injury

One of Microsoft's central, though vaguely articulated,[9] arguments for dismissal relies upon the complementary doctrines of antitrust standing and antitrust injury. In short, Microsoft argues that Plaintiffs have not satisfied "all of the requirements of Section 16 ... including proof of antitrust injury and a causal connection between the injury and the actions

found to be anticompetitive." Microsoft Reply at 12; *accord* Microsoft Mem. at 22.

■■■ The label "antitrust standing" has traditionally been applied to a court's evaluation of the relationship between the antitrust plaintiff's harm and the alleged wrongdoing by the defendant. *See Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 535 & n. 31, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Thus, antitrust standing has been characterized as a way to capture the requirement that the plaintiff demonstrate a "direct link between the antitrust violation and the antitrust injury." *Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir.1993). The doctrine of antitrust standing reflects the Supreme Court's attempt to articulate a test for recovery of treble damages pursuant to Section 4 of the Clayton Act that will not "encompass every conceivable harm that can be traced to alleged wrongdoing." *Associated Gen. Contractors*, 459 U.S. at 536, 103 S.Ct. 897. Notwithstanding this attempt, there exists no "black-letter rule that will dictate the result in every case." *Id.* Instead, where injury has been established, the decision as to whether the law affords a remedy is to be based upon the variety of factors, and ultimately upon specific circumstances of the case. *Id.* at 536–37, 103 S.Ct. 897.

■■■ Distinct from the antitrust standing requirement is the earlier-articulated requirement of antitrust injury. The requirement of antitrust injury arises out of the Supreme Court's announcement in *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d

---

9. The centrality of the issues of antitrust standing and injury is not strikingly apparent from Microsoft's opening memorandum, in part, because Microsoft does not initially distinguish its discussion of *parens patriae* standing from its discussion of antitrust standing and injury. Nevertheless, the Court draws

this distinction at the outset to reflect the fact that the case law which establishes the doctrine of *parens patriae* standing proceeds along a separate channel from the body of law that defines antitrust standing and injury. *See Infra* Section III.B.

701 (1977), that plaintiffs seeking "to recover treble damages [pursuant to § 4 of the Clayton Act] on account of § 7 [Clayton Act] violations, ... must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." 429 U.S. at 489, 97 S.Ct. 690. The *Brunswick* Court explained further that "[t]he injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* In other words, the antitrust injury requirement specifies that a "plaintiff's injury be caused by the anticompetitive aspect of the defendant's illegal conduct." William H. Page, *The Scope of Liability for Antitrust Violations,* 37 Stan.L.Rev. 1445, 1447 (1985) (cited with approval for "distinguishing concepts of antitrust injury and antitrust standing" in *Cargill Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 110 n. 5, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986)).

Although the *Brunswick* Court's enunciation of the requirement of "antitrust injury" concerned Section 4 of the Clayton Act, the antitrust injury requirement did not remain confined to Section 4 claims. Under Section 4 of the Clayton Act, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may sue for treble damages, 15 U.S.C. § 15, while Section 16 of the Clayton Act entitles "[a]ny person, firm, corporation, or association ... to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. Despite the differences between "actual" and "threatened" injury, the Supreme Court's opinion in *Cargill* extended the doctrine of "antitrust injury" beyond suits for damages under Section 4 to suits for injunctive relief pursuant to Section 16. *Cargill,* 479 U.S. at 110–113, 107 S.Ct. 484. In doing so, the Court concluded that "actual" and "threatened"

injury were part of a "single set of injuries" for which Section 4 and Section 16 provided "complementary remedies." *Id.* at 113, 107 S.Ct. 484. However, the *Cargill* Court expressly noted that the antitrust standing inquiry would not translate identically to a Section 16 suit, as some of the factors which apply to an antitrust standing inquiry in a Section 4 case, such as "the potential for duplicative recovery, the complexity of apportioning damages, and the existence of other parties that have been more directly harmed," are typically inapposite to Section 16 cases. *Cargill,* 479 U.S. at 111 n. 6, 107 S.Ct. 484. This difference results from the fact that a broad potential for recovery is not as troublesome where the only remedies available are equitable. *Id.* ("[A]s we recognized in *Hawaii v. Standard Oil Co.,* 'the fact is that one injunction is as effective as 100, and concomitantly, that 100 injunctions are no more effective than one.' 405 U.S. at 261, 92 S.Ct. 885.").

As the separate doctrines of antitrust standing and antitrust injury exist, in part, to "set economically rational limits ... on the frequency of antitrust litigation," Page, 37 Stan.L.Rev. at 1446, the doctrines are "commonly applied at an early stage of litigation, in either a motion to dismiss or for summary judgment," *id.* at 1447–48. Given that both doctrines serve to establish the proper scope of antitrust liability, *id.* at 1447, logic dictates that where liability has been found, and affirmed at the appellate level, both the District Court and the Court of Appeals have necessarily concluded that the requirements of antitrust standing and antitrust injury have been satisfied. In this case, the Court of Appeals' findings of antitrust standing and injury are implicit, if not express, in its order that the District Court "on remand ... after affording the parties a proper opportunity to be heard, can fashion an appropriate remedy for Microsoft's antitrust violations." *Microsoft,*

253 F.3d at 105; *see also Microsoft*, 253 F.3d at 103 ("We therefore vacate the District Court's final judgment, and remand with instructions to conduct a remedies-specific evidentiary hearing."). The Court, therefore, must consider the effect of the implicit and explicit findings by the Court of Appeals.

### 1. Law–of–the–Case Doctrine and the Mandate Rule

Where issues have been resolved at a prior state in the litigation, based upon principles of judicial economy, courts generally decline to revisit these issues. More than a mere rule-of-thumb, the " 'law-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not reopen questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C.Cir. 1995). The doctrine bars reconsideration of a court's explicit decisions, as well as those issues decided by necessary implication. *Id.; LaShawn A. v. Barry*, 87 F.3d 1389, 1394 (D.C.Cir.1996) (*en banc*) ("The law-of-the-case doctrine, the Supreme Court said, turns 'on whether a court previously decide[d] upon a rule of law ... not whether, or how well, it explained the decision.' ") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)) (alteration in *Christianson*).

Similar to the law-of-the-case doctrine is the "mandate rule," a " 'more powerful version' of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case." *Independent Petroleum Ass'n of America v. Babbitt*, 235 F.3d 588, 597 (D.C.Cir.2001) ("*IPAA II* ") (quoting *LaShawn*, 87 F.3d at 1393 n. 3 ("[A]n even more powerful version of the

[law-of-the-case] doctrine—sometimes called the 'mandate rule'—requires a lower court to honor the decisions of a superior court in the same judicial system.")). "Under the mandate rule, 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.' " *Id.* at 596–97 (quoting *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948)).

Based upon these principles, the Court cannot question the sufficiency of either antitrust standing or antitrust injury at this late point in the proceedings. To do so would contradict the law of the case, specifically the Court of Appeals' opinion and the ensuring mandate, which affirmed in part the liability findings for violations of Section 2 of the Sherman Act and the applicable state-law counterparts. Thus, application of the law-of-the-case doctrine and the mandate rule to this case precludes consideration, at this late stage, of Microsoft's antitrust standing and antitrust injury arguments. *See United States v. Microsoft Corp.*, Nos. 00–5212 and 00–5213 (D.C.Cir. June 28, 2001) (mandate affirming in part and reversing in part the District Court's findings of liability, remanding in part, and vacating the remedial order in full).

### 2. Jurisdiction, Law–of–the–Case Doctrine, and the Mandate Rule

Microsoft attempts to rescue its position from foreclosure by the law-of-the-case doctrine and the mandate rule by arguing that the issues it raises are jurisdictional. There are two fundamental flaws in this argument. First, the doctrines of antitrust standing and antitrust injury are not jurisdictional. Second, as discussed in greater detail below, the law-of-the-case doctrine applies equally to jurisdictional issues.

Ordinarily, a reference to "standing" would raise issues of Article III

jurisdiction and the judicially created "prudential" considerations that often accompany an analysis of Article III standing, *see Allen v. Wright,* 468 U.S. 737, 750–51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).[10] It is well-settled, however, that antitrust standing is a doctrine separate and distinct from "[t]he Art. III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court." *Id.* The doctrine of antitrust standing "requires more than the constitutional minimum for the 'case or controversy' that brings jurisdiction to Article III courts." 2 Phillip E. Areeda et al., Antitrust Law ¶ 335, at 287

(2d ed. 2000); *see also Associated Gen. Contractors,* 459 U.S. at 535 n. 31, 103 S.Ct. 897 ("[T]he focus of the doctrine of 'antitrust standing' is somewhat different from that of standing as a constitutional doctrine."); *In re Lorazepam & Clorazepate Antitrust Litigation,* 289 F.3d 98, 107–08 (D.C.Cir.2002) ("Unlike constitutional standing, this court's jurisdiction does not turn on antitrust standing."). Likewise, antitrust standing is not one of the prudential limits imposed in conjunction with Article III's express limitations.[11] Daniel Berger and Roger Bernstein, *An Analytical Framework for Antitrust*

**10.** The Supreme Court explained in *Allen:*

> The Art. III doctrine that requires a litigant to have "standing" to invoke the power of a federal court is perhaps the most important of these doctrines. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* [422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)]. Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. *See* [*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474–475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)]. The requirement of standing, however, has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. [*Id.* at 472, 102 S.Ct. 752].
>
> 468 U.S. at 750–51, 104 S.Ct. 3315.

**11.** The distinction between prudential and true Article III standing is immaterial in this discussion because the D.C. Circuit treats prudential aspects of standing as being "akin" to core Article III requirements for purposes of assessing subject matter jurisdiction.

*American Immigration Lawyers Ass'n v. Reno,* 199 F.3d 1352, 1357–58 (D.C.Cir.2000). Notwithstanding this treatment, the D.C. Circuit recognizes that the prudential aspect of standing is "an element that the courts must dispense with if Congress so provides." *Maryland People's Counsel v. FERC,* 760 F.2d 318, 321 (D.C.Cir.1985); *see also Warth,* 422 U.S. at 501, 95 S.Ct. 2197 ("Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules.").

While there can be said to be an aspect of "standing" in a court's evaluation of the statutory basis for a plaintiff's claim, this aspect of standing for purposes of establishing jurisdiction presents a low threshold. The plaintiff need only state a claim which is not so "patently insubstantial" that the exercise of jurisdiction is not warranted. *Best v. Kelly,* 39 F.3d 328, 330–31 (D.C.Cir.1994); *see supra* note 7; *infra* Section III.B. Where that minimal requirement is met, the Court's inquiry departs from the realm of jurisdiction and turns to the merits of the case. *See Best,* 39 F.3d at 331; *see supra* note 7; *infra* Section III.B. The Court observes that, if the doctrines of antitrust standing and injury are regarded as statutory requirements, any potential attack on Plaintiffs' satisfaction of those requirements in this case has been waived by Defendant's failure to raise this challenge to the merits in a timely manner. *See Shutte v. Thompson,* 82 U.S. (15 Wall.) 151, 159, 21 L.Ed. 123 (1872) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit.").

*Standing*, 86 Yale L.Rev. 809, 813 n. 11 (1977) (cited with approval in *Associated Gen. Contractors*, 459 U.S. at 535 n. 31, 103 S.Ct. 897).[12] Similarly, antitrust injury is distinct from Article III's injury requirement, and like antitrust standing, exceeds Article III's requirements. *See Brunswick*, 429 U.S. at 489, 97 S.Ct. 690 ("[F]or plaintiffs to recover treble damages on account of § 7 violations, they must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."). Thus, it is error to confuse antitrust standing and injury with the constitutional doctrine of standing.

Even if antitrust standing and injury could be characterized as jurisdictional, Microsoft's arguments remain foreclosed by the law-of-the-case doctrine. The D.C. Circuit and "other courts of appeals routinely apply law-of-the-case preclusion to questions of jurisdiction, and do so even when the first decision regarding jurisdiction is less than explicit." *LaShawn A.*, 87 F.3d at 1394 (citations omitted).[13] Seeming to ignore the holding in *LaShawn A.*, Microsoft argues that its standing argument is jurisdictional and therefore "cannot be waived." Microsoft Reply at 4. Microsoft uses the term "waiver" not in reference to the specific species of waiver doctrine that is related to the "law-of-the-case" doctrine,[14] but in its more general

**12.** Berger and Bernstein are quite clear that antitrust standing is separate from both the purely constitutional and the prudential aspects of the constitutional doctrine of standing:

> Because the doctrine of antitrust standing reflects the special antitrust policy considerations mentioned above, its focus is somewhat different from that of standing doctrines familiar to constitutional lawyers. In constitutional litigation, the initial standing question is whether the claimant is alleging a "particular, concrete injury" that gives him a "personal stake in the outcome" of the adjudication, and thereby meets the *constitutional and prudential* requirement of injury in fact.
>
> . . . .
>
> Antitrust plaintiffs pass this constitutional threshold by alleging the statutorily required "injury in [their] business or property." Since such economic injury satisfies the constitutional standing requirement of injury in fact, the antitrust standing injury is not concerned with whether the plaintiff has constitutional standing.

Berger and Bernstein, 86 Yale L.Rev. at 813 n. 11 (citations omitted) (alteration in Berger and Bernstein) (emphasis added).

**13.** The Court is aware that courts are not "bound by decisions on questions of jurisdiction made *sub silento* in previous cases·'when

a subsequent case finally brings the jurisdictional issue' to the Court." *LaShawn A.*, 87 F.3d at 1395 n. 6 (quoting *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*"Pennhurst II"*)); *accord United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ("Even as to our own judicial power or jurisdiction, this Court has followed the lead of Chief Justice Marshall who .held that this Court is not bound by a prior exercise of jurisdiction in a [previous] case where it was not questioned and it was passed *sub silento*."); *IPAA II*, 235 F.3d at 597. However, as in *LaShawn A.*, that rule "plainly has nothing to do with this [case]" because "[t]he quoted portion of *Pennhurst II* dealt with the *stare decisis* effect of decisions in *other* cases, not the effect of earlier decisions by the same appellate court in the *same* case." *LaShawn A.*, 87 F.3d at 1395 n. 6 (emphasis in original).

**14.** Waiver, as a doctrine related to law-of-the-case doctrine, dictates that a "legal decision made at one stage of litigation, unchallenged on subsequent appeal when the opportunity to do so existed [governs] future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *Crocker*, 49 F.3d at 739 (quoting *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250

usage.[15]

 Microsoft is correct, as a general proposition, that jurisdiction over the subject matter of a case cannot be conferred by the action or inaction of the parties, and therefore cannot be waived. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Nevertheless, Microsoft's recital of this fundamental tenet of federal jurisprudence does not advance its position. The point is not that this Court cannot address jurisdiction because that issue has been waived, but that the Court cannot now revisit the issue of jurisdiction by operation of the law-of-the-case doctrine and the mandate rule. In order for the law-of-the-case doctrine and the mandate rule to apply in this context, specifically to the jurisdictional issue, the Court must conclude that the issue was addressed and resolved by the Court of Appeals "explicitly or by necessary implication." *LaShawn A.*, 87 F.3d at 1394 (quoting *Crocker*, 49 F.3d at 739). Microsoft asserts in its reply memorandum that the mandate rule, and presumably its weaker version, the law-of-the-case doctrine, do not foreclose consideration of any of the issues raised in its motion because " 'there can be no law of the case' as to issues that were not decided by the Court of Appeals." Microsoft Reply at 4. Implying that the Court of Appeals has not addressed the jurisdictional issues raised in Microsoft's motion to dismiss, Microsoft ignores the necessarily implicit holding of the Court of Appeals.

 This Court is loathe to presume, as Microsoft does, that the Court of Appeals did not consider the jurisdictional issue of standing. Rather, because Article III courts are required to satisfy themselves of their own jurisdiction before proceeding to the merits of a case, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–96, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), it seems far more appropriate to conclude, "by necessary implication," *LaShawn A.*, 87 F.3d at 1394 (quoting *Crocker*, 49 F.3d at 739), that the threshold issue of constitutional standing, as a component of subject matter jurisdiction, was resolved prior to the Court of Appeals' evaluation of the merits of Plaintiffs' claims. As explained by the Supreme Court:

> every federal appellate court has a special obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review," even through the parties are prepared to concede it. *Mitchell v. Maurer*, 293 U.S. 237, 244[, 55 S.Ct. 162, 79 L.Ed. 338] (1934). *See Juidice v. Vail*, 430 U.S. 327, 331–332[, 97 S.Ct. 1211, 51 L.Ed.2d 376] (1977) (standing). "And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning · it. [When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for

---

(D.C.Cir.1987)) (alteration in *Crocker*). This species of the waiver doctrine presents an "analytically distinct principle: unlike law-of-the-case doctrine proper, this bar on raising issues omitted from prior appeals ... does not involve any previous appellate court decision on the barred issue." *Id.* As articulated by the Court of Appeals in *Crocker*, the doctrine of waiver is not a precise fit with the posture of this case, at least while the case is pending at the district court level. As noted above, Microsoft's "waiver" argument does not appear to rely upon this species of waiver.

15. As defined by Black's Law Dictionary, to waive is "[t]o abandon, renounce, or surrender (a claim, privilege, right, etc.); to give up (a right or claim) voluntarily." Black's Law Dictionary 1574 (7th ed. 1999). Waiver is defined as the "voluntary relinquishment or abandonment—express or implied—of a legal right or advantage." *Id.*

the purpose of correcting the error of the lower court in entertaining the suit." *United States v. Corrick*, 298 U.S. 435, 440[, 56 S.Ct. 829, 80 L.Ed. 1263] (1936) (footnotes omitted).

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 73, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)) (alteration in original); *Steel Co.*, 523 U.S. at 95, 118 S.Ct. 1003 (quoting *Arizonans for Official English*, 520 U.S. at 73, 117 S.Ct. 1055). The rule that the federal courts, at every level, are obliged to inquire of their own jurisdiction "is inflexible and without exception," *Insurance Corp. of Ireland*, 456 U.S. at 702, 102 S.Ct. 2099 (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)).[16] Any other rule would permit court pronouncement on the merits of a case in the absence of jurisdiction-action which is, "by very definition ... ultra vires." *Steel Co.*, 523 U.S. at 101–02, 118 S.Ct. 1003. Thus, "subject-matter delineations must be policed by the courts on their own initiative even at the highest level." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

▉ Paying little heed to the Court of Appeals' obligation to inquire both into its own jurisdiction, as well as the jurisdiction of the District Court, Microsoft argues, in effect, that because this case was consolidated with *United States v. Microsoft Corp.* and "no one focused on this issue until the paths [of the two cases] diverged on November the 6th, 2001," there can be no presumption that the Court of Appeals satisfied itself of its own jurisdiction prior to addressing the merits. Remedy Hrg. Tr. at 7333. Microsoft underestimates the Court of Appeals. The Court of Appeals, sitting *en banc*, noted at the outset of its review of the two cases that "[t]he action against Microsoft arose pursuant to a complaint filed by the United States and separate complaints filed by individual States," 253 F.3d at 45, and identified the matter before it as a "consolidated appeal," *id.* at 48. Thereafter, the appellate court issued a mandate to this Court remanding "the cases ... with instructions, all in accordance with the opinion for the Court filed herein this date." *United States v. Microsoft Corp.*, Nos. 00–5212 and 00–5213 (D.C.Cir. June 28, 2001).[17] This Court will not presume, as Microsoft suggests, that due to the presence of the United States as a plaintiff in one of the consolidated

---

**16.** The *Insurance Corp. of Ireland* Court stated:

[A] court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion. "[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record."

456 U.S. at 702, 102 S.Ct. 2099 (quoting *Mansfield, C. & L.M. R.*, 111 U.S. at 382, 4 S.Ct. 510) (second alteration in *Insurance Corp. of Ireland*).

**17.** The mandate provides in full:

These causes come on to be heard on the record on appeal from the United States District Court for the District of Columbia and were argued by counsel. On consideration thereof, it is

**ORDERED** and **ADJUDGED**, by the Court, that the judgment of the District Court appealed from in these causes is hereby affirmed in part, reversed in part, remanded in part, the final judgment embodying the remedial order is vacated in full and the cases are remanded with instructions, all in accordance with the opinion for the Court filed herein this date. *Microsoft*, Nos. 00–5212 and 00–5213 (D.C.Cir. June 28, 2001).

cases, the Court of Appeals ignored its obligation to consider its basis for jurisdiction in *both* cases. To the contrary, this Court takes the view, "by necessary implication," *LaShawn A.*, 87 F.3d at 1394 (quoting *Crocker*, 49 F.3d at 739), that the Court of Appeals considered the sufficiency of its jurisdiction and determined *sub silento* that it possessed jurisdiction over Plaintiffs' claims.[18]

### 3. General Building Contractors Ass'n v. Pennsylvania: footnote 22

In a similar vein, in its reply, Microsoft boldly applies to the facts of this case the proposition that a court need not consider the standing of other plaintiffs until they "seek or obtain relief different from that obtained by plaintiff with [unquestioned] standing." Microsoft Reply at 3. Applying this proposition, Microsoft reasserts its earlier contention that the Court of Appeals had no "occasion to discuss the several factors distinguishing the States' rights to equitable relief under federal or state law from that of the United States." Microsoft Mem. at 7; *accord* Microsoft

Reply at 3–4. Microsoft bases its argument in this regard on a footnote in *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). In *General Building Contractors*, the Supreme Court "decline[d]" to reach the issue of whether one of the plaintiffs, Pennsylvania, had satisfied Article III's standing requirements based on the rationale that while the standing of the other plaintiffs in that case remained unchallenged "the District Court possessed Art. III jurisdiction to entertain those common issues presented by all plaintiffs." *Id.* at 402 n. 22, 102 S.Ct. 3141. The Supreme Court further declined to address the issue that Pennsylvania had "sought attorney's fees in its own right" on the grounds that the Court's "judgment has removed the basis for such an award against petitioners until such time as Pennsylvania can again assert status as a prevailing party." *Id.* The Court closed its refusal to address Pennsylvania's standing with the statement that it need not do so "[u]ntil Pennsylvania obtains relief dif-

18. The holding in *IPAA II* does not detract from this conclusion, as that case is plainly distinguishable on the facts. In that case, on the first appeal, *IPAA I*, the Court of Appeals addressed two cases consolidated at the District Court level, *IPAA v. Babbitt* and *Samedan Oil Corp. v. Deer*, and reversed the District Court's grant of summary judgment on two discrete issues. *IPAA II*, 235 F.3d at 592. On its second appeal, IPAA

argue[d] that its claim originally included a challenge to the [agency decision challenged by the companion case, *Samedan Oil Corp. v. Deer*,] and that in *IPAA I* [the Court of Appeals] reversed the District Court's order granting summary judgment against IPAA in its challenge to [the agency decision in] *Samedan*. IPAA suggest[ed that] the District Court ignored this mandate by refusing to enter a judgment in its favor and subsequently dismissing its complaint. According to IPAA, by reopening questions already determined in earlier phases of this

litigation, the District Court violated the mandate rule.

*IPAA II*, 235 F.3d at 594. In response to these arguments, applying the rule in *LaShawn A.*, the Court of Appeals held that the mandate rule did not foreclose the District Court's consideration of jurisdiction because "the question of whether IPAA had challenged [the agency decision in *Samedan*] was not before us, nor decided by us, even by implication." *Id.* at 597. In stark contrast, in this case, the Court of Appeals heard an appeal by Defendant from all adverse rulings following a full trial on the merits of the plaintiffs' claims, the issuance of findings of fact and conclusions of law, and the imposition of a remedy. Given the appellate court's unfaltering obligation to inquire about its own jurisdiction, Defendant cannot argue that the issue of jurisdiction was somehow not before the Court when it heard Microsoft's appeal from Judge Jackson's final judgment on the merits of Plaintiffs' claims.

ferent from that sought by plaintiffs whose standing has not been questioned." *Id.*

The Supreme Court's statement in footnote 22 of *General Building Contractors* need not be read as an aberration or an exception to the law of standing. The Court's discussion in footnote 22 in *General Building Contractors* was concerned only with whether a particular plaintiff had satisfied Article III's standing requirements, *id.*, meaning the Constitution's "case or controversy" requirement, which is the minimum necessary for the Court to exert jurisdiction over the subject matter of the case, *Warth*, 422 U.S. at 499, 95 S.Ct. 2197.[19] Logically, where there exists in the same suit a particular plaintiff presenting questions common to other plaintiffs, and that plaintiff clearly satisfies the standing requirement, a court possesses subject matter jurisdiction, as a constitutional matter, to hear and adjudicate that plaintiff's case or controversy. Therefore, a court need not inquire separately of the standing of all of the plaintiffs so long as the "case or controversy" presented by all of the plaintiffs remains unitary. Understanding the basis for this rule, it is readily apparent that Defendant's reliance upon footnote 22 in *General Building Contractors* is misplaced.

 Unlike *General Building Contractors*, where plaintiffs with unquestionable Article III standing were parties to the *same case* as a single plaintiff with questionable Article III standing, the United States—the entity with unquestionable standing—has *never* been a party to *this case.* The separate cases of *United States v. Microsoft Corp.*, No. 98–1232, and *State of New York, et al. v. Microsoft Corp.*, No. 98–1233, were consolidated pursuant to Federal Rule of Civil Procedure 42(a). Rule 42(a) provides, in pertinent part, that "[w]hen actions involving a common question of law or fact are pending before the court ... it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed.R.Civ.P. 42(a). As this Court previously observed, consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *United States v. Microsoft Corp.*, Nos. 98–1232 and 98–1233, Order at 2 (D.D.C. Feb.1, 2002) (Order deconsolidating *United States v. Microsoft Corp.*, No. 98–1232, and *State of New York, et al. v. Microsoft Corp.*, No. 98–1233) (quoting *Johnson v. Manhattan Ry.*, 289 U.S. 479, 496–97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933) (discussing 28 U.S.C. § 734, the predecessor statute to Fed.R.Civ.P. 42(a))); *accord IPAA II*, 235 F.3d at 595–96 (noting that despite consolidation, even where parties "were represented by the same counsel and filed a joint brief on appeal, their individual cases were not somehow merged

---

**19.** It is not clear whether, in referencing "Article III jurisdiction to entertain those common issues presented by all plaintiffs," *General Building Contractors*, 458 U.S. at 402, n. 22, 102 S.Ct. 3141, the term "Article III jurisdiction" was intended to encompass "both constitutional limitations on federal-court jurisdictions and prudential limitations on its exercise." *Warth*, 422 U.S. at 498, 95 S.Ct. 2197. Erring on the side of caution, the Court will presume for purposes of its analysis in this case that the inquiry into "Article III jurisdiction" in this context includes both constitutional and prudential considerations.

*See Allen*, 468 U.S. at 750–51, 104 S.Ct. 3315 ("The Art. III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines.... Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.").

into one—they remained separate and distinct"). Rather, consolidation is a purely ministerial act which, as the record in these cases reflects, relieves the parties and the Court of the burden of duplicative pleadings and Court orders.

Although Microsoft would have the Court believe that the presence of entirely separate cases is a minor point, Microsoft Reply at 4, because the doctrine of Article III standing is simply a way of capturing the Constitution's "case or controversy" limitation on federal court jurisdiction and the prudential considerations related thereto, the fact that the claims were brought in separate "cases" would seem to impact substantially upon any discussion of Article III standing. Furthermore, although the two cases presented common issues of law, *State of New York, et al. v. Microsoft Corp.* also presented issues which were wholly absent from *United States v. Microsoft Corp.*, namely the claims of each individual state under the corresponding provisions of state law. Both the District Court and the Court of Appeals assumed jurisdiction over these separate state law claims. *Microsoft*, 253 F.3d at 46 ("Our judgment extends to the District Court's findings with respect to the state law counterparts of the plaintiffs' Sherman Act claims."); *Microsoft*, 87 F.Supp.2d at 35 ("[T]he evidence in the record proving violations of the Sherman Act also satisfies the elements of analogous causes of action arising under the laws of each plaintiff state. For this reason, and for others stated below, the Court holds Microsoft liable under those particular state laws as well."). Finally, even assuming that the separateness of the two cases does not render inapplicable footnote 22 of *General Building Contractors*, the language of *General Building Contractors* does not afford Microsoft a basis upon which to challenge Plaintiffs' establishment of antitrust standing and injury because these are non-jurisdictional issues which

go to the sufficiency of Plaintiffs' pleadings and/or the evidence adduced at trial.

To the extent that Defendant's motion invokes the concepts of antitrust standing and injury, it reads as a challenge to Plaintiffs' legal entitlement to seek a remedy following the Court of Appeals' finding of liability in this case. Seeming to ignore the mandate of the Court of Appeals, Microsoft shrugs off the impact of the appellate court's opinion. Specifically, Microsoft asserts that the failure of the Court of Appeals to "distinguish[ ] the States' rights to equitable relief under federal or state law from that of the United States" somehow invites a new analysis of the sufficiency of the allegations in Plaintiffs' complaint and the proof provided at trial. Microsoft Mem. at 7; *accord* Microsoft Mem. at 13; Microsoft Reply at 3. While it is difficult to quibble with the notion that the Court of Appeals may not have foreseen the divergence of *United States v. Microsoft Corp.* from *State of New York, et al. v. Microsoft Corp.*, nothing in the appellate opinion undermines Plaintiffs' ability to proceed to a judicial determination on the issue of remedy. Notwithstanding this fact, with little more than a passing reference, Microsoft implores this Court to ignore the explicit findings of liability and presume that the Court of Appeals simply overlooked the fact that it was presented with two separate and distinct cases which sought relief on separate statutory grounds. Having failed to identify any legitimate basis for a challenge to the sufficiency of the pleadings or the evidence adduced at trial, Microsoft's arguments with regard to antitrust standing and injury are improper given the procedural posture of the case.

### B. *Parens Patriae* Standing

Another of Microsoft's primary arguments focuses upon yet another spe-

cies of "standing"—*parens patriae* standing. The doctrine of *parens patriae* standing[20] allows states to bring suit on behalf of their citizens in certain circumstances by asserting an injury to a "quasi-sovereign interest." *Snapp*, 458 U.S. at 601, 102 S.Ct. 3260. Quasi-sovereign interest "is a judicial construct that does not lend itself to simple or exact definition." *Id.* For a state to bring suit in its *parens patriae* capacity in federal court, it must establish that its *parens patriae* interest satisfies the constitutional minimum of Article III standing and is a proper basis for suit under the applicable statute. *See Connecticut v. Physicians Health Services of Conn., Inc.*, 287 F.3d 110, 119–20 (2d Cir.2002) (addressing the Article III and statutory components of *parens patriae* standing separately); *accord Maryland People's Counsel*, 760 F.2d at 321 (holding that the bar on suits by states as *parens patriae* against the federal government arises from the "prudential component" of standing, which Congress may override, rather than a deficiency in the " 'core component' of the constitutional doctrine of standing"). These inquiries are separate such that the presence or absence of a statute authorizing *parens patriae* standing does affect whether Article III's standing requirements have been satisfied. *Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306, 316 (3d Cir.1981) (*en banc*). Of course, if either Article III standing or statutory standing is absent, the Court is without subject matter jurisdiction over the claim. *Insurance Corp. of Ireland*, 456 U.S. at 702, 102 S.Ct. 2099 ("Subject matter jurisdiction ... is an Article III as well as a statutory requirement; it functions as a restriction on federal power and contributes to the characterization of the federal sovereign.").

■■■ At the outset of this discussion, it bears repeating that the Supreme Court has "sharply distinguished the jurisdictional question presented for immediate resolution from the merits questions unavoidably pretermitted for determination at later stages of the litigation." *Payne v. District of Columbia*, 559 F.2d 809, 815–16 (D.C.Cir.1977); *see supra* note 7. Only where the federal claims are found to be "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court" is dismissal for want of jurisdiction appropriate. *Hagans*, 415 U.S. at 543, 94 S.Ct. 1372 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)); *accord Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 70–71, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Best*, 39 F.3d at 330. Where the claims do not meet this insubstantiality standard, dismissal of the claims for "failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Hagans*, 415 U.S. at 542, 94 S.Ct. 1372. Applying those principles to this case and Microsoft's motion, the Court can readily satisfy itself that Plaintiffs' claims are not frivolous. Therefore, as illustrated by the discussion below, substantially all of the Court's inquiry into Plaintiffs' satisfaction of antitrust injury, antitrust standing, and *parens patriae* standing is an inquiry on the merits.

Notwithstanding the foregoing, whether jurisdictional or otherwise, as discussed in detail above, the law-of-the-case doctrine forecloses consideration by this Court of matters which were addressed at an earli-

---

**20.** *"Parens patriae* means literally 'parent of the country.' " *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) (quoting Black's Law Dictionary 1003 (5th ed. 1979)).

er stage in proceedings, either explicitly or implicitly, by the District Court and Court of Appeals. *LaShawn A.*, 87 F.3d at 1393–95; *Crocker*, 49 F.3d at 739–40. It scarcely bears repeating that, in order to find and affirm liability, the District Court and the Court of Appeals necessarily concluded that Plaintiffs' capacity to bring suit as *parens patriae* was satisfied on all fronts. Nonetheless, in the interest of thoroughness, the Court will address the legal basis for Microsoft's arguments with regard to *parens patriae* standing.

### 1. Article III Injury

 Injury in a suit brought by a state in its *parens patriae* capacity rests upon "sufficiently severe and generalized" harm to the welfare of that state's citizens, rather than harm to the proprietary interest of the state. *Commonwealth of Pennsylvania v. Kleppe*, 533 F.2d 668, 675 (D.C.Cir.1976). A state's concern for the "continuing prosperity of [its] econom[y]" falls within the "recognized category of quasi-sovereign interests" which justify *parens patriae* standing. *Id.* at 674; *accord Snapp*, 458 U.S. at 607, 102 S.Ct. 3260 ("[A] state has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."). In this case, Plaintiffs alleged and the District Court found that "in each of the plaintiff states, Microsoft's anticompetitive conduct has significantly hampered competition." *Microsoft*, 87 F.Supp.2d at 55.[21] This finding survived the Court of Appeals' ruling inasmuch as

the appellate court affirmed the District Court's other findings of liability for violations of Section 2 of the Sherman Act and the appropriate state law counterparts. Therefore, the Court has little doubt that Plaintiffs have satisfied Article III's threshold standing requirement.[22]

### 2. Statutory Requirements

 Microsoft's argument extends beyond the Article III minimum to the issue of whether Plaintiffs have satisfied the antitrust standing and injury requirements for a *parens patriae* claim under Section 16 of the Clayton Act. In this regard, Microsoft posits that Plaintiffs have not satisfied the requirements for a *parens patriae* claim under Section 16 of the Clayton Act.

 It is beyond dispute that federal antitrust law, specifically Section 16 of the Clayton Act, provides statutory authorization for claims brought by a state in its capacity as *parens patriae*. *See Georgia v. Pennsylvania R.R.*, 324 U.S. 439, 447, 65 S.Ct. 716, 89 L.Ed. 1051 (1945); *see also California v. American Stores Co.*, 495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990) (holding in a suit brought by California in its *parens patriae* capacity that divestiture is a form of injunctive relief within the meaning of Section 16 of the Clayton Act); *Hawaii*, 405 U.S. at 258–66, 92 S.Ct. 885 (acknowledging that *parens patriae* standing will support a claim for injunctive relief pursuant to Section 16 of

---

**21.** Although the District Court reached this conclusion in the context of a discussion of intrastate injury in conjunction with its analysis of certain state laws, *Microsoft*, 87 F.Supp.2d at 55, the conclusion is nonetheless applicable to the Plaintiff States' claims under federal law.

**22.** For Article III purposes, the breadth of the injury among the several states is not relevant, as limitations on claims for broadly felt

injuries are not constitutionally based. *See Warth*, 422 U.S. at 501, 95 S.Ct. 2197 (holding that Article III is satisfied by an allegation of a "distinct and palpable injury ... even if it is an injury shared by a large class of other possible litigants" because Congress may "grant[ ] a right of action" and provide standing to "invoke the general public interest in support of their claim"). Such limitations are prudential and thus, are subject to alteration by Congress. *Id.*

the Clayton Act, but holding that *parens patriae* standing is not available for claims for damages brought pursuant to Section 4 of the Clayton Act). An inquiry into the statutory requisites for a Section 16 claim for injunctive relief, when such a claim is brought by a state in its *parens patriae* capacity, necessarily invokes the concepts of antitrust standing and injury, discussed above, as these concepts further refine the parameters of an appropriate interest for purposes of an antitrust suit. Thus, the Court's analysis of Defendant's statutory argument relies upon antitrust jurisprudence as well as *parens patriae* jurisprudence.

The Supreme Court candidly acknowledged in *Kleppe* that "[t]he nature of the economic or welfare interest necessary to justify state standing is one of the more obscure issues with which [the Court] must deal." *Kleppe*, 533 F.2d at 674. Seizing upon this obscurity, Microsoft insists that in order to obtain any remedy in these proceedings, Plaintiffs must now establish that they "are seeking to remedy some state-specific injury." Microsoft Mem. at 17. In this regard, Microsoft first takes the position that the Litigating States must distinguish the injury to their citizenry from the injury "shared in common by all citizens of the United States." *Id.* at 18. From this proposition, Microsoft drifts into the assertion that the injuries identified by the Plaintiff States have been suffered only by "specific businesses or other discrete groups of constituents," namely Microsoft competitors. *Id.* at 20–21.

■■■ Microsoft's initial assertion is without support in the law.[23] While certainly a state alleging injury must establish that its own citizens have suffered some injury, none of the cases cited by Microsoft hold that *parens patriae* stand-

ing should be denied where the injury is felt by the citizens of the other states. *See Snapp*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995; *Hawaii*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184; *Georgia*, 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051; *see also* New York Amicus Br. at 7–17; Multi-State Amici Br. at 2–11; United States Amicus Br. at 10–15. Indeed, such a requirement is undermined by the Supreme Court's acknowledgment in *Hawaii v. Standard Oil* that "the United States Government, the governments of each State, and any individual threatened with injury by an antitrust violation may all sue for injunctive relief against violations of the antitrust laws, and . . . they may theoretically do so simultaneously against the same persons for the same violations. . . ." *Hawaii*, 405 U.S. at 261, 92 S.Ct. 885. Moreover, if the Court agreed with Microsoft's reading of the law, a state's right to bring suit as *parens patriae* under the Clayton Act would be nullified where the harm sweeps broadly across the states. In such a situation, the individual states would have to rely solely upon the federal government to bring suit to cease the harm. This result runs contrary to the well-established principle that "[s]uits by a State, *parens patriae*, have long been recognized. There is no apparent reason why those suits should be excluded from the purview of the anti-trust acts." *Georgia*, 324 U.S. at 447, 65 S.Ct. 716 (italics added).

With regard to Microsoft's latter assertion, that the claimed injuries are insufficient because they are based upon too discrete a group of constituents, this claim is flatly contradicted by the District Court's conclusion that "significant adverse effect on competition within the state . . . is manifestly proven by the facts pre-

---

**23.** Microsoft concedes that the term "state-specific injury" is a "Microsoft" term, which does not appear in the case law. Remedy Hrg. Tr. at 7359.

sented here.... [M]illions of citizens of, and hundreds, if not thousands, of enterprises in each of the United States and the District of Columbia utilize PCs running on Microsoft software." *Microsoft,* 87 F.Supp.2d at 55. This conclusion was not altered on appeal. *See generally Microsoft,* 253 F.3d 34. It cannot, therefore, be said that this is a case where the "primary thrust of an alleged wrong is injury to a narrowly limited class of individuals, and the harm to the economy as a whole is insignificant by comparison." *Kleppe,* 533 F.2d at 675. At a minimum, this is a case where "the direct impact of the alleged wrong [is] felt by a substantial majority, though less than all, of the state's citizens, so that the suit can be said to be for the benefit of the public." *Id.* As a result, the Court finds Microsoft's *parens patriae* arguments, notwithstanding their untimeliness and preemption by the law of the case and the mandate in this case, to be insufficient to warrant the "dismissal" of Plaintiffs' request for injunctive relief.

### 3. Collateral Attack

Defendant offers a third argument against *parens patriae* standing by Plaintiffs in this case, asserting broadly that to allow Plaintiffs to obtain relief would "undermine the enforcement scheme embodied in the Sherman and Clayton Acts." Microsoft Mem. at 22. In this regard, Microsoft characterizes Plaintiffs' request for a remedy in this case as a "collateral attack" on the proposed settlement between the United States and Microsoft in *United States v. Microsoft Corp.* Remedy Hrg. Tr. at 7371. As Plaintiffs and the United States points out, in crafting this argument, Microsoft quotes selectively from a number of cases with the effect of mischaracterizing their holdings. *Compare* Microsoft Mem. at 23–24 (citing *Kleppe,* 533 F.2d at 676–77, *South Carolina v. Katzenbach,* 383 U.S. 301, 324, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966)), *with*

States Opp'n at 15 *and* United States Amicus Br. at 13–14. The Court finds this tactic unpersuasive. Microsoft acknowledges that the cases it cites are clearly distinguishable on their facts because Plaintiffs' suit is not against the federal government—the defendant in those cases—but nonetheless insists that the case law reflects a "policy ... relevan[t] to this case in the court's exercise of its discretion." Remedy Hrg. Tr. at 7371. If, in fact, this line of cases may be read to impact at all upon this Court's discretion, then the cases, even as argued by Microsoft, do not counsel in favor of a blanket dismissal of Plaintiffs' request for an injunction. To the contrary, the Court may better consider the merits of this argument in conjunction with its consideration of the merits of Plaintiffs' proposed remedy and the exercise of its equitable powers.

Further supplementing its *parens patriae* arguments and its more general policy arguments, Microsoft relies upon a second line of cases for the proposition that a state cannot "impos[e] its own policy choice on neighboring States." Microsoft Mem. at 24 (quoting *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 571, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). Microsoft argues that *BMW* and similar cases "demonstrate why *parens patriae* standing under Section 16 of the Clayton Act must be restricted to claims based on discrimination among States or on some distinctive local impact." Microsoft Mem. at 25. Once again, the Court finds Microsoft's argument in this regard to be unpersuasive, as it is largely, if not entirely, unsupported by the case law. The holding in *BMW* is based upon principles of "state sovereignty and comity," rather than federalism concerns as Microsoft's motion implies. *BMW,* 517 U.S. at 572, 116 S.Ct. 1589. More importantly, *BMW* and the other cases cited by Microsoft concerned suits under state law, rather than suits for redress under federal law, like the instant

one.[24] The mere presence of state law claims in this suit does not detract from the presence of the federal claims and the relief afforded thereunder. Thus, the Court finds Microsoft's reliance upon *BMW* and similar cases to be unpersuasive.

## C. Other Arguments

Having disposed of Microsoft's more detailed arguments involving antitrust standing, antitrust injury, and *parens patriae* standing, the Court turns to a series of arguments raised in summary form by Microsoft in its memorandum in support of dismissal. Once again, the Court takes the position that because liability in this case has been established and affirmed on appeal, the law-of-the-case doctrine precludes all of the following arguments, which are attacks upon the Litigating States' ability to bring suit and to obtain a judgment in their favor. Nonetheless, for the sake of completeness, the Court touches briefly upon the legal merits of Microsoft's remaining arguments.

### 1. Appointments and Take Care Clauses

■■■ Microsoft argues that to permit the Litigating States to seek relief distinct from that agreed upon and submitted to the Court for approval by Microsoft and the United States "would raise serious constitutional questions under both the Appointments and Take Care Clauses of Article II." Microsoft Mem. at 27. The "Appointments Clause," appearing in Article II, Section 2 of the Constitution, provides that the President "shall nominate, and by and with the Advice and Consent of the Senate shall appoint ... Officers of the United States." U.S. Const. Art. II, § 2. Arguing that the Appointments

Clause enables compliance with the Constitution's mandate that the President "take [c]are that the [l]aws be faithfully executed," U.S. Const. Art. II, § 3, Defendant insists that the Litigating States' request for equitable relief "impermissibly interfere[s]" with the President's duties in this regard. Microsoft Mem. at 27. As the United States points out in its amicus brief, Microsoft's argument in this vein can be viewed as an attack not only on actions by private parties pursuant to Section 16, but on actions pursuant to "Sections 4 (damage actions by private parties for antitrust violations) and 4C (state *parens patriae* suits for money damages for violations of the Sherman Act)" on the grounds that the actions authorized thereunder are inconsistent with Article II. United States Amicus Br. at 19. Not surprisingly, this ambitious argument and the ensuing conclusion that Plaintiffs' claims should be precluded are not directly supported by the case law cited by Microsoft in its memorandum. *See Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (holding that Congress is without authority to mandate that state officers, unsupervised by the President, perform administrative functions in conjunction with the execution of federal law); *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (holding the Appointments Clause was not violated when Congress empowered a court to appoint prosecutorial officers pursuant to the independent counsel provisions of the Ethics in Government Act of 1978, 28 U.S.C. §§ 49, 591 *et seq.*); *Buckley v. Valeo*, 424 U.S. 1, 140, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (holding that the Federal Election Campaign Act of 1971, 2 U.S.C. §§ 431 *et seq.*, which vests the Federal Election Commission with primary and substantial

---

**24.** Indeed, *BMW* concerned an attempt by Alabama to "impose economic sanctions on violators of its laws with the intent of chang-ing the tortfeasors' lawful conduct in other States." 517 U.S. at 572, 116 S.Ct. 1589.

responsibility for administering the Act violates Article II, § 2, cl. 2, of the Constitution because "such functions may be discharged only by persons who are 'Officers of the United States' within the language of that section" of the Constitution). Indeed, the Supreme Court has expressly acknowledged that the rights of private plaintiffs pursuant to Section 16 of the Clayton Act are meant to "supplement[ ] Government enforcement of the antitrust laws." *United States v. Borden*, 347 U.S. 514, 518, 74 S.Ct. 703, 98 L.Ed. 903 (1954). "[P]rivate and public [antitrust] actions were designed to be cumulative, not mutually exclusive." *Id.*[25] Accordingly, the Court rejects Microsoft's Appointments Clause and Take Care Clause arguments.

### 2. Supremacy Clause

Microsoft raises an additional concern for the supremacy of federal enforcement by relying upon the Supreme Court's holding in *Geier v. American Honda Motor Co.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). Likening a Department of Transportation regulation to the proposed settlement in *United States v. Microsoft Corp.*, Microsoft Mem. at 32, Microsoft contends that the Litigating States' continuing request for equitable relief "frustrate[s] the objectives of the Executive Branch in carrying out its special responsibilities to enforce federal law." *Id.* at 33. Applying similar reasoning, Microsoft cites to *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 366, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (holding that a Massachusetts law "restricting the authority of its agencies to purchase goods or services from companies doing business with Burma is invalid under the Supremacy Clause of the National Constitution owing to its threat of frustrating federal statutory objectives") and *Barnett Bank v. Nelson*, 517 U.S. 25, 27, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) (holding that a "federal statute that permits national banks to sell insurance in small towns pre-empts a state statute that forbids them to do so" via application of the Supremacy Clause). *Id.* Based on these cases, Microsoft attempts to argue that the Supremacy Clause forbids federal action by the Litigating States that is separate from the action of the United States.

■■■ Each of the cases Microsoft cites is readily distinguishable on its facts. Moreover, Microsoft's arguments on this point ignore the fact that states have long been permitted to sue under the federal antitrust laws in their capacity as *parens patriae*.[26] *See Georgia*, 324 U.S. at 447, 65 S.Ct. 716 ("Suits by a State, *parens patriae*, have long been recognized. There is no apparent reason why those suits should be excluded from the purview of the antitrust acts.") (italics added). Given the well-established rights of the states to sue as *parens patriae* under federal antitrust law, *id.*, along with the similarly well-established right of the states to supplement federal antitrust regulation with state antitrust laws, *see California v. ARC America Corp.*, 490 U.S. 93, 101–02, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989), in the absence of more persuasive case law to the contrary, it is antithetical to conclude that a state action seeking relief distinct from the relief sought in a federal action violates the

---

**25.** *Microsoft quotes selectively from the language in* Borden *to imply that suits by the federal government are intended to supersede suits by private litigants, including states in their* parens patriae *capacity.* Microsoft Mem. at 15. The holding in *Borden* does not go that far. To the contrary, *Borden* holds only that suits by private litigants resulting in an injunction do not preclude suits by the United States for injunctive relief. *Borden*, 347 U.S. at 518–20, 74 S.Ct. 703.

**26.** Some antitrust statutes expressly encourage state litigation as *parens patriae*. *See, e.g.*, 15 U.S.C. § 15c.

Supremacy Clause. As a result, the Court finds Microsoft's Supremacy Clause argument to be without merit.

### 3. United States v. Microsoft Corp.

Microsoft makes a series of arguments based upon the existence of a proposed final judgment in *United States v. Microsoft Corp.* In essence, Microsoft argues that consideration of the proposed consent decree submitted by the parties in *United States v. Microsoft Corp.*—the "[Second] Revised Proposed Final Judgment"—is appropriate only in that case and not in this one. Microsoft Mem. at 38–39. Without disputing this somewhat general and inoffensive proposition, the Court fails to see how it impacts upon these proceedings. That Microsoft has chosen to offer as its proposed remedy in this case a remedy which is identical to the "[Second] Revised Proposed Final Judgment" submitted in *United States v. Microsoft Corp.* does not bear upon this Court's discretion to order an appropriate remedy for antitrust violations pursuant to Section 16. It borders on frivolous to argue that Microsoft's decision to submit the same proposed remedy in both cases would have such an effect and thereby enable Microsoft to bootstrap itself into an argument for preclusion.[27]

### 4. Fifth Amendment Takings Clause

Finally, Microsoft argues that "several aspects" of the Litigating States' proposed remedy "raise substantial issues under the Takings Clause of the Fifth Amendment, and those issues militate against awarding such relief under traditional equitable

principles." Microsoft Mem. at 39–40. Microsoft's argument in this regard is directed at the specifics of the Litigating States' remedy proposal. Because Microsoft seeks outright dismissal of the Litigating States' request for equitable relief, this side-trip into the merits of select portions of Plaintiffs' proposal seems, if not contradictory to Microsoft's arguments, then at lease premature. Furthermore, Microsoft's argument regarding "several aspects" of the Litigating States' remedy proposal is overly vague, failing to cite to any specific provision in the Litigating States' remedy proposal. *Id.* at 39–41. As consideration of the "takings" issue raised by Microsoft would be far more appropriate in the context of a substantive evaluation of the competing remedy proposals, the Court defers its discussion of this argument, if necessary at all, until it addresses the merits of the competing proposals.

## IV. CONCLUSION

This case has been unique from its inception and has continued to distinguish itself from its predecessors throughout its pendency. The Court's Opinion in response to Microsoft's "motion to dismiss" reinforces that distinction in that the Court's holding in this instance is a product, primarily, of the unusual procedural posture of this case. Thus, the Court observes that the legal issues addressed herein may prove appropriate for consideration in a subsequent case where they are not hobbled at the outset by the existing law of the case.[28]

---

**27.** As no judgment has been entered in *United States v. Microsoft Corp.*, at this point, the Court need not address Microsoft's argument that entry of a final judgment in *United States v. Microsoft Corp.* constitutes *res judicata* such that the Litigating States cannot obtain relief in their own case.

**28.** The policy arguments raised in the United States' amicus brief, and to a lesser extent in Microsoft's memoranda, regarding the Court's exercise of its equitable powers, although not specifically addressed in this Memorandum Opinion, have not passed unnoticed. Once again, however, given the unique posture of this case, including specific instructions from the Court of Appeals to "af-

Nonetheless, in this particular case, for the reasons set forth in detail above, the Court concludes that Microsoft's motion is without merit and must be denied. In so concluding, the Court rejects Microsoft's legal arguments on their merits, as well as Microsoft's contention that these legal arguments are not foreclosed by the law of this case. An appropriate Order accompanies this Memorandum Opinion.

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is this 12th day of June, 2002, hereby

**ORDERED** that Defendant Microsoft's "Motion for Dismissal of the Non–Settling States' Demand for Equitable Relief" is DENIED.

**SO ORDERED.**

ford[] the parties a proper opportunity to be heard" on the issue of remedy, *Microsoft,* 253 F.3d at 105, the Court does not regard these arguments as sufficient to justify the "dismissal" of Plaintiffs' request for injunctive relief.

The Court has yet to determine whether these policy considerations will inform the Court's exercise of its equitable powers in devising a remedy in this case.